IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRANCIS VISCOMI | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CORIZON CORRECTIONAL HEALTHCARE | : | NO. 14-5759 |

MEMORANDUM

Bartle, J.                                                    August 12, 2015

          Plaintiff Francis Viscomi ("Viscomi") brings this five-
count action asserting claims of unlawful employment practice under
Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et
seq., and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa.
Cons. Stat. Ann. §§ 951 et seq., against his former employer,
Corizon Health, Inc. ("Corizon").  Viscomi, who is Caucasian, was
formerly employed by Corizon as a Licensed Practical Nurse.  He
alleges that his supervisor disciplined him and his employment was
eventually terminated because he is a Caucasian male.[1]

          Now before the court is the motion of Corizon for
summary judgment under Rule 56 of the Federal Rules of Civil
Procedure.

          Summary judgment is appropriate "if the movant shows that
there is no genuine dispute as to any material fact and the movant

---

[1]  Viscomi also avers in his complaint that he was subjected to
retaliation after he pursued union grievance procedures.  This
count was dismissed for lack of subject-matter jurisdiction in
an order dated January 9, 2015.  (Doc. # 4).

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a);

see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Rule

56(c)(1) states:

> A party asserting that a fact cannot be or is
> genuinely disputed must support the assertion
> by ... citing to particular parts of materials
> in the record, including depositions,
> documents, electronically stored information,
> affidavits or declarations, stipulations ...,
> admissions, interrogatory answers, or other
> materials; or ... showing that the materials
> cited do not establish the absence or presence
> of a genuine dispute, or that an adverse party
> cannot produce admissible evidence to support
> the fact.

Fed. R. Civ. P. 56(c)(1).

A dispute is genuine if the evidence is such that a

reasonable factfinder could return a verdict for the non-moving

party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986).

Summary judgment is granted where there is insufficient record

evidence for a reasonable factfinder to find for the plaintiffs.

Id. at 252.  When ruling on a motion for summary judgment, we may

only rely on admissible evidence.  See, e.g., Blackburn v. United

Parcel Serv., Inc., 179 F.3d 81, 95 (3d Cir. 1999).  We view the

facts and draw all inferences in favor of the non-moving party.  In

re Flat Glass Antitrust Litig., 385 F.3d 350, 357 (3d Cir. 2004).

The following facts are undisputed or taken in the light

most favorable to Viscomi.  Corizon provides health care services

at correctional facilities throughout the United States, including

prisons in Philadelphia, Pennsylvania.  Viscomi began his employment at Corizon as a Licensed Practical Nurse ("LPN") in 2004 and worked at facilities in the city.  His job responsibilities included, among other things, insuring the timely implementation of physicians' orders, clearly documenting patient encounters, properly administering prescribed medications, and maintaining an accurate accounting of narcotics, sharp objects, and syringes.

In the correctional context it is important to keep track of sharp objects and narcotics since these items are valuable and potentially dangerous commodities if they make their way into the inmate population.  LPNs like Viscomi were therefore required at the end of each shift to complete a count of sharp items and a pill count.  The counts were to be recorded in logs and signed.

Corizon has a structured disciplinary policy in place to ensure employee diligence in these and other tasks.  When a problem arises, an employee is first given a Verbal Communication. Following a Verbal Communication, the employee receives a First Written Warning, a Second Written Warning, and a Final Warning. After the Final Warning the employee may be terminated for any subsequent issue.  Grievance procedures exist at every stage in the process, and Corizon reserves the right to skip intermediate steps where appropriate.  Corizon employees may also receive Employee Counseling Reports which are a non-punitive means to address workplace deficiencies.

Viscomi received a number of verbal and written warnings during his employment with Corizon. From May 2007 through September 2009, he received two Verbal Communications and three written warnings, including a Final Written Warning, for excessive lateness. He also received a First Written Warning for leaving a patient in an unclean state. From April 2010 through February 2011, he received three counseling reports and three written warnings for various performance-related issues. He failed to co-sign a pill count in April 2010, for which he received a counseling report. He received a Verbal Communication when he changed an inmate's medication dosage without a doctor's order later on that same month. He had problems with completing notes and other required documentation. In February 2011 Viscomi received a counseling report for failing to sign the "sharps count," that is, the daily accounting of sharp objects including syringes. It appears, however, that this warning was eventually rescinded because he was mistaken for another employee who was on duty at the time. Viscomi also received a Final Written Warning at the end of February for failing to complete paperwork, but after he filed a grievance, this warning was also rescinded.

Viscomi's issues with paperwork, lateness, and failing to sign sharps- and pill-count logs continued into 2012. On June 6, 2012, Viscomi failed to sign the chart verifying that he had given insulin to a patient. While according to Corizon this

-4-

presented a potentially dangerous situation in that another clinician reviewing the file could have administered a second dose of insulin in the absence of a proper notation, Viscomi explains that he did not document the insulin administration because this particular inmate ordinarily came to the infirmary at irregular times for his insulin and Viscomi would simply leave the medication out for him when he stopped by.

On the next day, June 7, an inmate had run out of medicine and Viscomi provided him with another inmate's medication of the same type.  Viscomi asserts that the inmate had become disruptive and was demanding his pills.  To mitigate what he believed was an imminently dangerous situation he borrowed medication assigned to another inmate rather than calling a supervisor or going out to obtain additional medication.  Corizon, however, expressly forbids the giving of one patient's pills to another.

Viscomi's supervisor decided to terminate his employment after the incidents of June 6 and 7.  Viscomi filed a grievance with his union in connection with the termination.  His grievance was denied, and the union declined to pursue arbitration.  The parties disagree over whether Viscomi raised any issues of discrimination during the grievance process.  Viscomi claims to have done so by telling reviewing officials that "maybe other

employees were not treated the same way as I was." He was replaced by an African-American female LPN.

After Viscomi's termination, Corizon's regional director sent an email to Viscomi's supervisor stating that he was "extremely concerned regarding personnel practices at your site" and that in the future, all terminations should go through regional management. Indeed, except in circumstances in which immediate termination is appropriate, Corizon policy states that a recommendation for termination must be approved at the regional level before a termination decision has been made. The director who sent this email, however, reviewed Viscomi's termination during the grievance procedure and approved it.

To begin our analysis of Viscomi's claims of gender and race discrimination, we set forth the burden-shifting framework provided in <u>McDonnell Douglas Corp. v. Green</u>, which controls cases of discrimination under Title VII and the PHRA. 411 U.S. 792, 802 (1973); <u>Jones v. Sch. Dist. of Phila.</u>, 198 F.3d 403, 410 (3d Cir. 1999). The plaintiff bears the initial burden of making out a <u>prima facie</u> case. To challenge the plaintiff's <u>prima facie</u> case, the defendant must come forward with legitimate, non-discriminatory reasons for its actions. <u>McDonnell Douglas</u>, 411 U.S. at 802. If the defendant succeeds in doing so, the plaintiff has the next move. In order to survive the defendant's motion for summary judgment, "the plaintiff must point to some evidence, direct or

-6-

circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994). At all times, the plaintiff retains the burden of proof on his or her claim. Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).

Under this burden-shifting framework, it is Viscomi's prima facie burden for his gender and race discrimination claims to come forward with evidence that:

> (1) [H]e is a member of a protected class;
> (2) [h]e was qualified for the position [h]e sought to attain or retain;
> (3) [h]e suffered an adverse employment action; and
> (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination.

Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir. 2008). One way in which a plaintiff can create an inference of discrimination is by offering evidence of a similarly situated employee, not of the protected class, who was treated more favorably. Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 645 (3d Cir. 1998).

In this matter the parties focus their argument on the last prong of the prima facie analysis. Having reviewed the positions of the parties and the record presented, we conclude that Viscomi has failed to come forward with any admissible evidence that

he was disciplined or terminated under circumstances that could give
rise to an inference of intentional discrimination.  As Corizon
notes, he merely urges that he was one of only two Caucasian males
employed by Corizon at the correctional facilities at which he
worked and that he faced "resentment" from his supervisor.  The
simple demographic makeup of a plaintiff's workplace, however, does
not satisfy his or her prima facie burden without additional
circumstances that might make reasonable an inference of invidious
discrimination.  See Haley v. City of Plainfield, 169 F. App'x 670,
674 (3d Cir. 2006).[2]  Viscomi's unsupported speculation about
resentment fails to satisfy the last prong of the prima facie case.

Moreover, even if Viscomi had made out a prima facie case,
he has failed to rebut Corizon's reasons for his discipline and
termination.  Corizon has articulated that each instance of
discipline of Viscomi was the result of a specific shortcoming in
his job performance, including infractions like failing properly to
account for sensitive items and failing to adhere to safety
protocols for the administration of medications.  Except for two
incidents in which the warnings were rescinded, Viscomi does not
dispute that he committed the acts or failures for which he was
disciplined.  For the most part, he attempts to downplay these

---

[2]  Viscomi also points to an African-American female coworker as
a similarly situated comparator but does nothing to demonstrate
that she faced different consequences for similar conduct.

occurrences or recharacterize them as more infrequent than Corizon has presented them.  For example, Viscomi questions the seriousness of the events of June 6 and June 7, 2012 in which he failed to document an insulin administration and gave an inmate medication that was assigned to another patient.

This effort misses the mark.  The inquiry is not whether Corizon was "wrong or mistaken" or "wise, shrewd, prudent, or competent" in disciplining or firing him.  Id. at 765.  Rather, we must determine whether there is sufficient evidence for a reasonable factfinder to conclude that "discriminatory animus motivated the employer."  Id.  Even if Viscomi was justified in failing to note the medication that he gave out or in swapping pills from one inmate to another, there is nothing to suggest the existence of the discrimination which Title VII and the PHRA proscribe.

Viscomi simply believes that the supervisor who terminated him, an African-American female, was more stringent with him than his other supervisors.  He further contends that the supervisor was later involved in the termination of Corizon's only other male, Caucasian LPN at Viscomi's work location.  However, Viscomi's subjective belief that his supervisor had a vendetta against him is insufficient, especially when he has conceded that he committed nearly all of the workplace transgressions for which he was disciplined.  See Jones v. Sch. Dist. of Phila., 198 F.3d 403, 413-14 (3d Cir. 1999).  In addition, he does not cite any record

evidence to support the allegation that his supervisor terminated
another male, Caucasian employee, nor does he provide any detail as
to how this other LPN's termination was sufficiently similar to his
own circumstances to be relevant.[3]  Finally, while Viscomi correctly
notes that his supervisor violated Corizon policy by terminating him
without first obtaining the approval of regional management, higher-
ups at Corizon later signed off on his termination at the conclusion
of a grievance procedure.  Nowhere is there any suggestion that the
failure to adhere to policy was motivated by race or gender.  Even
if he had met his prima facie burden, Viscomi has not pointed to any
evidence from which a reasonable factfinder could disbelieve
Corizon's reasons for his termination or otherwise conclude that
invidious discrimination was the root of Corizon's decision to
terminate him.  Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994).

          Accordingly, the motion of Corizon for summary judgment in
its favor and against Viscomi will be granted on both his Title VII
and his PHRA claims.

---

[3]   Nor is there anything from which it may be inferred that
Viscomi's replacement with an African-American female LPN was
motivated by race or gender.